UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTINE LIN FRANKLIN,

       Plaintiff,

Case No. 1:15-cv-463

v.

HON. JANET T. NEFF

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant,
_____/

## OPINION

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff Christine Lin Franklin seeks review of the Commissioner's decision denying her claim for supplemental security income (SSI) under Title XVI of the Social Security Act.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1998). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who

is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 48 years of age on the date of the Administrative Law Judge's (ALJ) decision. (Tr. 8, 35.) She has a seventh grade education and was previously employed as a packer and cleaner, although the two jobs do not amount to relevant work for purposes of agency regulations. (Tr. 37–38, 43–44, 69.) Plaintiff applied for benefits on December 5, 2012, alleging that she had been disabled since November 21, 2012, due to "health issues, depression, [and] learning problems." (Tr. 73.) Plaintiff's application was denied on May 13, 2013, after which time she

2

requested a hearing before an ALJ. (Tr. 89–105.) On March 6, 2014, Plaintiff appeared with her counsel before ALJ Carol Guyton for an administrative hearing with testimony being offered by Plaintiff and a vocational expert (VE). (Tr. 26–72.) In a written decision dated May 9, 2014, the ALJ determined that Plaintiff was not disabled. (Tr. 8–25.) Thereafter, the Appeals Council declined to review the ALJ's determination, making it the Commissioner's final decision in the matter. (Tr. 1–6.) Plaintiff subsequently initiated this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[1] 1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. § 404.1520(f)).

3

Plaintiff has the burden of proving the existence and severity of limitations caused by her impairments and that she is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Guyton determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date. (Tr. 13.) At the second step in the sequential evaluation, the ALJ determined Plaintiff had the following severe impairments: (1) alcohol substance abuse disorder; (2) borderline intellectual functioning; and (3) affective disorder. (Tr. 13.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (Tr. 13–15.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to work at all exertional levels except for the following: mentally, she is able to perform simple routine tasks involving no more than simple short instructions and simple work-related decisions with few work place changes. Socially, she should avoid contact with the general public and she cannot perform jobs that require reading, reports writing, and math. Additionally, she is unable to maintain work that requires production quotas. Of note, her inability to have contact with the general public has been included based on her diagnosis of borderline intellectual functioning

(Tr. 15.) Continuing with the fourth step, the ALJ determined that Plaintiff had no past relevant work. (Tr. 19.)

At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given her limitations. *See Richardson*, 735 F.2d at 964. The VE testified that there existed approximately 48,300 jobs in the

state of Michigan as a machine feeder, packager, and cleaner that an individual similar to Plaintiff could perform. (Tr. 69–70.) This represents a significant number of jobs. *See Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988); *McCormick v. Sec'y of Health & Human Servs.*, 861 F.2d 998, 1000 (6th Cir. 1988).

Accordingly, the ALJ concluded that Plaintiff was not disabled under the Social Security Act at any point from December 5, 2012, (the date of application) through the May 9, 2014, (the date of the decision.) (Tr. 20–21.)

**DISCUSSION**

Plaintiff's statement of errors presents the following claims:

1. The ALJ committed reversible error by not finding that Plaintiff met Medical Listing 12.05;

2. The ALJ committed reversible error by wrongly weighing the evidence; and

3. The ALJ committed reversible error by using improper considerations to discount Plaintiff's credibility.

(ECF No. 11, PageID.454.) The Court will consider the issues below.

**A. Listing 12.05(A)**

On March 14, 2014, Plaintiff visited Dr. Thomas Spahn, Ed.D, a licensed psychologist, on referral by Plaintiff's counsel. (Tr. 401–04.) Plaintiff was 47 years of age at the time. (Tr. 402.) Dr. Spahn performed a psychological assessment, and administered a Wechsler Adult Intelligence Scale-Four Edition full scale test to Plaintiff. The results of the test found that Plaintiff had a full scale IQ of 56. (Tr. 404.) Given this score, Plaintiff argues she meets the requirements for Listing 12.05(A) in the listing of impairments.

It is well established that a claimant must show that she satisfies all the individual

5

requirements of a listing. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003); *see also Perschka v. Comm'r of Soc. Sec.*, 411 F. App'x 781, 786–87 (6th Cir. 2010). "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Comm'r of Soc. Sec.*, 34 F. App'x 202, 203 (6th Cir. 2002). "It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment." *Elam*, 348 F.3d at 125. Thus it is Plaintiff's burden at step 3 of the sequential analysis to prove that she meets or equals the listing's diagnostic description and one of the four severity criteria specified in parts A, B, C, or D. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

The specific requirements of Listing 12.05 are as follows:

12.05: Intellectual Disability. Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

A. Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;

OR

B. A valid verbal, performance, or full scale IQ of 59 or less;

OR

C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;

OR

D. A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:

6

      1. Marked restriction of activities of daily living; or
      2. Marked difficulties in maintaining social functioning; or
      3. Marked difficulties in maintaining concentration, persistence, or pace; or
      4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.[2]

Assuming that Plaintiff satisfies the criteria articulated in subsection (B) (e.g., scored less than 59 on an IQ test), Plaintiff must also satisfy the requirements articulated in the introductory paragraph of Section 12.05. 20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.00 ("[i]f your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets" section 12.05). Specifically, Plaintiff must establish that she satisfied the "diagnostic description" of intellectual disability articulated in the introductory paragraph of Section 12.05. *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 451 (6th Cir., Feb. 15, 2007); *see also Foster*, 279 F.3d at 355 (to satisfy Section 12.05, a claimant must demonstrate that she experienced deficiencies in adaptive functioning prior to attaining the age of 22).

The ALJ concluded that Plaintiff had failed to demonstrate she met the requirements of the diagnostic description:

> There are no school records or any other records to support an onset of significantly sub-average general intellectual functioning with deficits in adaptive functioning during the developmental period as required by the Listing. As detailed previously, the record reveals that the claimant, despite having some depressed mood and limited intellectual functioning, has generally presented well to treating and examining sources and is quite functional in her daily activities. She has failed to exhibit clinical signs of

---

[2] The Commissioner has modified Listing 12.05 to replace the phrase "mental retardation" with "intellectual disability." 78 Fed. Reg. 46,499 (August 1, 2013) (codified at 20 C.F.R. pts. 404 and 416). The Court notes the change in terminology did not reflect any substantive change in the listing. 78 Fed. Reg. at 46,500–01; *see also Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x. 980, 982 n.2 (11th Cir. 2013).

> significant deficits in social, daily, personal or cognitive function such that she would be unable to work at an unskilled job.

(Tr. 17.)

The ALJ's conclusion is supported by substantial evidence. Though Plaintiff undoubtably experienced a difficult childhood and has learning difficulties, the record contains no evidence that Plaintiff experienced deficiencies in adaptive behavior or suffered from an intellectual disability prior to the age of 22 or at anytime after age 22. Neither Plaintiff's care providers nor any of the medical professionals who examined the record in this case concluded that Plaintiff was intellectually disabled or satisfied the "diagnostic description" of intellectual disability articulated in the introductory paragraph of Section 12.05. Instead, Plaintiff has been diagnosed as experiencing borderline intellectual functioning by Dr. John Gallagher, Ed.D. and Dr. Robert Baird, Ph.D. (Tr. 79–80, 352.) Even Dr. Spahn, who scored Plaintiff's IQ, did not conclude she was intellectually disabled. (Tr. 404.) As the ALJ concluded, the evidence supports the conclusion that Plaintiff suffers not from intellectual disability, but from borderline intellectual functioning. The Sixth Circuit has observed that a diagnosis of borderline intellectual functioning is inconsistent with a diagnosis of intellectual disability and, therefore, precludes a finding that the requirements of Section 12.05 have been met. *See Cooper*, 217 F. App'x at 451.

Plaintiff's reported activities likewise provide substantial evidence supporting the ALJ's conclusion. *See Burrell v. Comm'r of Soc. Sec.*, 2000 WL 1827799 at *2 (6th Cir., Dec. 8, 2000) (no evidence of a deficit in adaptive functioning where claimant "remained fairly active, maintains an interest in his household, and enjoys apparent satisfactory relationships with family members"). Plaintiff reported that she spends the day taking care of her four year old grandson. (Tr. 52–53.) Plaintiff has no significant difficulties with her personal care. She can prepare meals, go

shopping, and handle money. (Tr. 191–94, 349.) She attends church twice a month. (Tr. 65.) Though Plaintiff may point to evidence showing that she was further limited, "[t]he findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion . . . [t]his is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 772–73 (6th Cir. 2001). It is the ALJ's role to weigh the evidence and resolve inconsistencies, as was done here. *Blair v. Comm'r of Soc. Sec.*, No. 98–3581, 1999 WL 196497, *2 (6th Cir. March 26, 1999).

Plaintiff urges the Court to adopt the Eleventh Circuit's holding that if a claimant satisfies the severity requirements of one of the four subsections in Listing 12.05, a rebuttable presumption exists that the claimant also satisfies the requirements of the diagnostic description. (ECF No.11, PageID.455–56 (citing *Grant v. Astrue*, 255 F. App'x 374, 375 (11th Cir. 2007)) The Sixth Circuit has not adopted the Eleventh Circuit's approach, however, and the Court declines to do so here. Such a holding is inconsistent with strong precedent holding that the burden rests squarely with Plaintiff to demonstrate that she satisfies *all* the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002); *see also Jones v. Comm'r of Soc. Sec.*, No. 1:08-CV-562, 2009 WL 3498809, at *3 (W.D. Mich. Oct. 26, 2009). The ALJ evaluated in detail the evidence of record and determined that Plaintiff failed to meet her burden. The ALJ's decision is supported by substantial evidence.

**B.     Medical Opinions**

Plaintiff next makes an undeveloped argument by citing *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) for the proposition that "opinions from non-treating and non-

9

examining sources are never assessed for 'controlling weight.'" (ECF No. 11, PageID.457 (citing *Gayheart*, 710 F.3d at 376.)) Plaintiff claims that the ALJ disregarded this ruling by adopting "the findings of a non-examining psychologist" who had not reviewed the whole record. (ECF No. 11, PageID.457.) The Court finds that Plaintiff has failed to fully develop this argument such that the Court might make a ruling, and accordingly finds that Plaintiff has waived this claim of error. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to … put flesh on its bones.").

Even if the Court were to cobble together an argument for Plaintiff, such an argument would not be successful. Though the ALJ gave "great weight" to the opinion of Dr. Gallager, there is no indication that the ALJ gave the opinion controlling weight or believed she was required to do so. (Tr. 18–19.) An ALJ may rely on the opinions of the state agency physicians who reviewed a plaintiff's file. *See* 20 C.F.R. § 404.1527(e)(2) (i) (state agency medical consultants and other program physicians are "highly qualified physicians . . . who are also experts in Social Security disability evaluation"). To the extent that the ALJ gave more weight to Dr. Gallager than other physicians who had examined Plaintiff, "as a general matter, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination (a 'nonexamining source')." *Gayheart*, 710 F.3d at 375. However, this is not a rigid rule. Rather, "[a]ny record opinion, even that of a treating source, may be rejected by the ALJ when the source's opinion is not well supported by medical diagnostics or if it is inconsistent with the record." *Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 439 (6th Cir. 2012). The ALJ made such

10

a determination here.

Finally, the fact that Dr. Gallager may not have reviewed the entire record does not mandate remand. "When an ALJ relies on a non-examining source who did not have the opportunity to review later submitted medical evidence, especially when that evidence reflects ongoing treatment," reviewing courts require "some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks omitted). Dr. Gallager reviewed the record as of March 25, 2013. (Tr. 80). The record reflects that while the vast majority of the record was reviewed by Dr. McCarthy, Plaintiff did undergo further treatment. Consistent with *Brooks*, however the ALJ considered the latter additions to the record including, for example, the opinion of Dr. Spahn. Accordingly, Plaintiff's second claim of error is rejected.

### 3. Credibility.

Plaintiff's final claim of error is that the ALJ erred in discounting the Plaintiff's subjective allegations. (ECF No. 11, PageID.457.) In discounting Plaintiff's allegations, the ALJ noted:

> Although the claimant stated that her symptoms of anxiety and depression also prevented her from maintaining employment, she has sought and required very little treatments. She has not attempted to maintain on-going counseling services and she has not required psychiatric hospitalizations, intensive therapies, or in home support services. Additionally, she testified that she was able to maintain a long-term relationship with a retired individual. While she maintained her anti-depressive medication regime, her condition has remained well-controlled. The record does show that the claimant's depressive symptoms have been negatively affected due to her chronic alcohol consumption habit. In October 2012, she admitted that she consumed twelve (12) beers every other day. During the hearing, she stated she stopped consuming excessive amounts of alcohol in January 2013. She

11

added that her new year's resolution was to 'slow' down her drinking, further
suggesting her alcohol consumption has negatively affected her moods.

(Tr. 17 (internal citations omitted.)) The ALJ also found that Plaintiff's allegations were undercut by her treating physician's treatment notes. (Tr. 17–18.)

As the Sixth Circuit has long recognized, "pain alone, if the result of a medical impairment, *may* be severe enough to constitute disability." *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984) (emphasis added); *see also Grecol v. Halter*, 46 F. App'x 773, 775 (6th Cir. 2002) (same). As the relevant Social Security regulations make clear, however, a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." 20 C.F.R. § 404.1529(a); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)); *Hash v. Comm'r of Soc. Sec.*, 309 F. App'x 981, 989 (6th Cir. 2009). Instead, as the Sixth Circuit has established, a claimant's assertions of disabling pain and limitation are evaluated pursuant to the following standard:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Walters*, 127 F.3d at 531 (citations omitted). This standard is often referred to as the *Duncan* standard. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004).

Accordingly, as the Sixth Circuit has repeatedly held, "subjective complaints may support a finding of disability only where objective medical evidence confirms the severity of the alleged symptoms." *Id.* (citing *Blankenship v. Bowen*, 874 F.2d 1116, 1123 (6th Cir. 1989)). However, where the objective medical evidence fails to confirm the severity of a claimant's

subjective allegations, the ALJ "has the power and discretion to weigh all of the evidence and to resolve the significant conflicts in the administrative record." *Workman*, 105 F. App'x at 801 (citing *Walters*, 127 F.3d at 531).

In this respect, it is recognized that the ALJ's credibility assessment "must be accorded great weight and deference." *Id.* (citing *Walters*, 127 F.3d at 531); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001) ("[i]t is for the [Commissioner] and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony"). It is not for this Court to reevaluate such evidence anew, and so long as the ALJ's determination is supported by substantial evidence, it must stand. The ALJ found Plaintiff's subjective allegations to not be fully credible, a finding that should not be lightly disregarded. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 780 (6th Cir. 1987). In fact, as the Sixth Circuit recently stated, "[w]e have held that an administrative law judge's credibility findings are virtually unchallengeable." *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (citation omitted).

In support of her decision to discount Plaintiff's credibility, the ALJ noted that Plaintiff's alcohol use played a role in her depression and mental impairments. In fact, several physicians noted Plaintiff's substance abuse, and recommended she attend treatment. (Tr. 353, 402.) Contrary to Plaintiff's assertion, an ALJ may consider a claimant's substance abuse in addressing the claimant's credibility. *See Jackson v. Comm'r of Soc. Sec.*, No. 1:14-CV-628, 2015 WL 4611472, at *7 (W.D. Mich. July 31, 2015) (collecting cases.). Plaintiff also stated that her depression caused her to be unable to pursue any work. (Tr. 52.) The ALJ found, however that "she has sought and required very little treatments. She has not attempted to maintain on-going

counseling services and she has not required psychiatric hospitalizations, intensive therapies, or in-home support services." (Tr. 17, 348.) All this suggests that Plaintiff's depression is not as limiting as Plaintiff alleges. In sum, substantial evidence supports the ALJ's decision to discount Plaintiff's subjective testimony, and accordingly Plaintiff's claim is rejected.

## CONCLUSION

For the reasons set forth herein, the Commissioner's decision will be **AFFIRMED**. A separate judgment shall issue.


Dated:     January 13, 2016            /s/ Janet T. Neff
                                       JANET T. NEFF
                                       UNITED STATES DISTRICT JUDGE